## MISSOURI PACIFIC RAILWAY COMPANY v. KANSAS CITY & INDEPENDENCE AIR LINE, Appellant.

**Division One, June 15, 1905.**

1. **ACTION: Contract: Quantum Meruit.** A party cannot count upon a contract and recover upon a *quantum meruit*. So that where defendant elects to stand on a contract in his counterclaim for the value of work done by him, he cannot recover for the value of the work done unless the contract authorized the work to be done, even though the work may have been valuable to the plaintiff, the other party to the contract.

2. ———: ———: ———: **Spirit of Contract.** Where two railroad companies enter into a contract for the protection of certain portions of their rights of way from the encroachment of the river, and neither the letter, spirit, nor context of the contract casts any obligation on one of them to protect the defendant's right of way between certain other points, one of them cannot set up as a counter-claim the cost of protecting the part of its right of way not mentioned in the contract, when sued by the other for its share in protecting that part mentioned in the contract, however beneficial the work done may have been to that other, and even though it was necessary to protect that other's right of way.

3. **EXCESSIVE VERDICT: Costs of Appeal.** Where the instructions to the jury were to find for respondent a specific sum with specified interest from a specified date, and that finding is excessive by a small amount, the respondent will be taxed with the costs of the appeal, upon a remittitur and affirmance, although the motion for a new trial contained only the general objection that the damages assessed were excessive.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry*, Judge.

AFFIRMED CONDITIONALLY.

*Samuel W. Moore* and *Samuel W. Sawyer* for appellant.

(1) Under the contract the Missouri Pacific was bound to protect the Air Line track from the encroachments of the river at every point between the Air Line junction and a point four hundred feet east of the Santa Fe overhead crossing. 17 Am. & Eng. Ency. Law (2 Ed.), 6; Church v. United States, 143 U. S. 457; Noonan v. Bradley, 9 Wall. 394; Coghlan v. Stetson, 19 Fed. 727; County of Johnson v. Wood, 84 Mo. 489; Union Depot Co. v. Railroad, 113 Mo. 213; Nordyke & Marmon Co. v. Kehlor, 155 Mo. 643; Torbert v. Jeffery, 161 Mo. 645; Carney v. Chillicothe, etc., Co., 76 Mo. App. 352; Renn v. Supreme Lodge, 83 Mo. App. 442; Burgess v. Badger, 124 Ill. 293. (2) Even if the Missouri Pacific did not bind itself to protect the Air Line track at points where the Air Line track was not on the Missouri Pacific right of way, still the work which was done by the Air Line was reasonably necessary to protect the tracks of both companies at points where the Air Line track was on the Missouri Pacific right of way, and therefore was work which should have been done by the Missouri Pacific. District of Columbia v. Gallaher, 124 U. S. 505; Ellis v. Harrison, 104 Mo. 270; Union Depot Co. v. Railroad, 131 Mo. 291; Carter v.

Foster, 145 Mo. 383; Williams v. Railroad, 153 Mo. 487; Green v. Higham, 161 Mo. 333; Railroad v. Smith, 75 Ill. 496. (3) Upon the refusal of the Missouri Pacific to comply with its contract, the Air Line was justified in going forward with the work and is entitled to recover one-half of the cost thereof in this action. 1 Sutherland, Damages (3 Ed.), secs. 88, 91; Hirt v. Hahn, 61 Mo. 496; Haysler v. Owen, 61 Mo. 270; Black River Lumber Co. v. Warner, 93 Mo. 374; Wright v. Sanderson & Sims, 20 Mo. App. 534; Spink v. Mueller, 77 Mo. App. 85; Railroad v. Delaware, etc., Co., 98 Va. 503; Tilden v. Buffalo, etc., Co., 50 N. Y. Supp. 511, 27 App. Div. 510; Logansport v. Way, 52 Ind. 578. (4) Even if the court could not say as a matter of law that the work done by the Air Line was reasonably necessary for the protection of the tracks of both companies where the Air Line track was on the Missouri Pacific right of way, still it was at least a question for the jury to determine under all evidence, and the court erred in directing a verdict for the plaintiff on the issue raised by the counterclaim. Smith v. Clark, 58 Mo. 145; Hammond v. Beeson, 112 Mo. 190; Chapman v. Railroad, 146 Mo. 481; Duetmann v. Kilpatrick, 46 Mo. App. 624; Blanke v Dunnerman, 67 Mo. App. 591; Lime & Cement Co. v. Fire Proofing Co., 77 Mo. App. 21; Bachelor v. Cooper, 150 Pa. St. 533; Fairbanks v. Jacobs, 69 Iowa 265; Coon v. Citizens Water Co., 152 Pa. St. 644; Clapp v. Thayer, 112 Mass. 296; Mason v. Field, 119 Mass. 585; Stock v. Hurd, 62 Hun 618. (5) The verdict was excessive, and the case should be reversed on that ground, unless the plaintiff is required to remit a portion of the verdict and pay all costs, including the costs of appeal. Johnson v. Morrow, 60 Mo. 339; Miller v. Hardin, 64 Mo. 545; Clark v. Bullock, 65 Mo. 535; Peck v Childers, 73 Mo. 484; Higgs v. Hunt, 75 Mo. 106; Kimes v. Railroad, 85 Mo. 611; Dempsey v. Schawacker, 140 Mo. 680; Priest v. Deaver, 22 Mo. App. 276; Link v. Prufrock, 85 Mo. App. 618.

*Elijah Robinson* for respondent.

(1) By the provisions of the contract in question plaintiff was required to do only such work as was necessary to protect that portion of defendant's track that was on its right of way. That is exactly what the contract says, and exactly what it means; and that being true, it necessarily follows that defendant was not entitled to recover on its counterclaim. (2) Defendant was not entitled to recover from plaintiff anything on account of work done by it in constructing the dikes mentioned in evidence. (3) Plaintiff joins with defendant in invoking the well-settled rule that, where a contract is ambiguous, or the proper construction thereof is involved in doubt, it is proper for the court to look to the construction which the parties themselves have placed upon such contract. The contract in question is not ambiguous. Its language is susceptible of only one construction, and it, therefore, follows that the court is not under necessity of ascertaining what construction the parties have themselves placed upon it. However, the plaintiff not only does not object to, but, on the contrary, would be very glad to have the court consider all of the testimony bearing upon the question as to the construction that was placed on the contract by both plaintiff and defendant. (4) The fact that the work done by defendant for the protection of that portion of its track which was not on plaintiff's right of way, may have contributed indirectly to the protection of that portion of the track which was on said right of way, did not make plaintiff liable for any part of the cost of doing said work. (5) Plaintiff admits that the verdict was for $53.85 more than it should have been, upon the basis of the court's instruction to the jury; but it insists that for that reason the costs of this appeal should not be adjudged against the plaintiff.

MARSHALL, J.—This is an action upon a contract entered into between the parties hereto on the 24th of October, 1891, and under which the plaintiff seeks to recover $9,160.78, for the work and labor done and materials furnished in protecting the right of way of the plaintiff, on which the defendant company, under the contract, had constructed its line also, from the inroads and ravages of the Missouri river. The plaintiff, also, in the second count of the petition, seeks to enter and take possesion and oust defendant from the portion of the land upon which the defendant's track is laid, on the ground that under the terms of the contract, the plaintiff was authorized to enter upon and remove the defendant's tracks from the plaintiff's right of way, if the defendant failed to make the payments stipulated for in the contract.

The answer of the defendant admits the doing of the work set out in the first count of the petition of the plaintiff, but alleges that it amounted to $8,074.22 and not to $9,160.78 as the plaintiff claims. The answer also admits the contract. The answer then contains a counterclaim, under which the defendant seeks to recover $15,088.06 from the plaintiff, which defendant claims is due to it for work done by the defendant under the terms of the contract, and which, by the contract, the plaintiff was obligated to do but refused to do.

At the close of the whole case, the defendant asked the court to instruct the jury that plaintiff was not entitled to recover. The court refused so to do, and the defendant excepted. At the request of the plaintiff the court instructed the jury that the plaintiff was entitled to recover $8,074.22, the amount admitted to be due by the defendant in its answer, with interest thereon from the 15th of July, 1897, to the date of the verdict, at the rate of six per cent per annum, and further instructed the jury to find for the plaintiff on the defendant's counterclaim. The jury returned a verdict for the

plaintiff for $9,722.20 on the plaintiff's cause of action, and also found for the plaintiff on the defendant's counterclaim. After proper steps the defendant appealed.

The case made is this:

Both companies are domestic railroad corporations. At the date of the contract here involved, the plaintiff owned a right of way adjacent to the Missouri river, in Jackson county, between Independence and Kansas City. The defendant was about to construct a railway between Independence and Kansas City, which would cross the plaintiff's right of way at a point about 1,500 feet west of the Big Blue river. On the 24th of October, 1891, the two companies entered into a contract, the preamble of which recited that the defendant company was desirous of and was then constructing a line of railroad connecting with the Kansas City Suburban Railroad near a point where said railroad crosses the plaintiff's road in Jackson county, thence to Independence, and that it was mutually advantageous to the parties hereto to avoid the crossing of the tracks of said companies, and that, "such mutual purpose and advantage can only be gained by the location of the railway of the said Air Line Company, north of the tracks of the Missouri Pacific Railway Company, from said point of connection with the said road, to a point east of where the Chicago, Santa Fe and California railroad crosses overhead the Missouri Pacific Railroad Company's tracks; and whereas, the chief obstacle in so locating said track, is the imminent danger of encroachment upon it by the Missouri river by the erosions of its banks; . . . That for and in consideration of the mutual and reciprocal covenants, undertakings, promises and agreements, made by each of said parties, to and with the other, and which are hereinafter stated, as well as for other good and valuable considerations, the parties hereto have come to an understanding and entered into an agreement, looking to the location, con-

struction and maintenance and operation of the said second party's railroad on the first party's right of way, between the Kansas City & Suburban Belt railroad and a point about four hundred feet east of the Chicago, Santa Fe and California railroad, and looking to the protection of the second party's tracks when there built against damage by the Missouri river, the terms and conditions of which understanding and agreement are as follows:''

The first stipulation of the contract contains a conveyance by the plaintiff to the defendant of an easement of right of way for defendant's railroad over a portion of the plaintiff's right of way beginning at the point four hundred feet east of the right of way of the Chicago, Santa Fe and California railroad, which point is marked A on the plat attached to the contract, and extending westwardly about ten hundred and seventy-seven feet to a point marked B on the plat, and also from a point marked C on the plat, and extending westwardly to a point marked D on the plat for a distance of about twenty-nine hundred feet. From the points B to C, a distance of about three thousand feet, the plaintiff did not grant an easement to the defendant to place its railroad on plaintiff's right of way, but the defendant acquired a right of way of its own lying to the north of the plaintiff's right of way and between the plaintiff's right of way and the Missouri river.

The contract does not disclose why this condition existed, nor is any reason given why the defendant did not acquire the right to run its road over and upon the plaintiff's right of way between said intermediate stations as well as at other points along the route; but the fact is that between said points B and C, for a distance of about three thousand feet, the defendant acquired its own right of way and constructed its road thereon.

The second clause of the contract is as follows:

''Whereas the right of way and roadbed of the

party of the first part, between said points, are now in danger of being wholly or in part washed away by the waters of the Missouri river; and whereas, when the party of the second part shall have built its road on said first party's right of way as herein provided for, said danger from said waters will then be common to both parties hereto, the party of the first part in consideration of that fact, and for the consideration aforesaid, has undertaken, promised and agreed, to promptly do, from time to time, all work which may be necessary and proper (unavoidable and unforeseen accidents or causes excepted), to protect the said second party's roadbed, when so built, on said strips or right of way, from danger of being injured or damaged by the waters of said river, and the said second party'' (the defendant herein) ''shall be under no obligation of law to do any of such work, but the party of the second part has promised and agreed, and does hereby promise and agree, to pay to the party of the first part, one-half of the actual cost of doing such work, and in estimating the cost of such work, the first party shall not claim any profit either on the material furnished or on the labor employed, or charge for the transportation of such material a greater freight rate than charged for other material carried over its lines for its own use.

''Said work of protection shall be divided into two classes; the one class to be called 'Emergency Work,' the other, 'Permanent Work.' All emergency work shall be done whenever necessary or whenever in the opinion of the party of the first part, or its agents, an immediate necessity shall have arisen for some protection against the then immediate and impending danger of injury or damage by the encroachment of the Missouri river. For the expense of doing such emergency work, bills shall be rendered monthly, to the party of the second part, for its half of the cost of such work done during the previous month and shall be paid with-

in thirty days after the receipt thereof. The plans and location of the 'permanent work,' such as the constructing of dykes and other like permanent structures for the purpose of diverting the current and force of the Missouri river from impinging against and encroaching upon the right of way, shall be designed and the costs estimated in advance of the beginning of such work by the engineers of the two parties to this agreement.

"Party of the second part shall pay upon monthly estimates for the work of the previous month, in like manner for the permanent work as for the emergency work."

The contract also contained a stipulation for the forfeiture of all rights thereunder by the defendant in case it failed to promptly pay its half of the cost of maintenance provided for by the contract.

Under this contract the defendant constructed its railroad upon the parts of the defendant's right of way herein described. From time to time between the date of the contract in 1891 and the month of June, 1896, the plaintiff did the necessary work of protecting the right of way from the inroads of the river, and each month rendered a bill to the defendant for one-half of the costs thereof, which the defendant paid. Between June, 1896, and June, 1897, the plaintiff did other work of like character and rendered bills to the defendant for one-half thereof, aggregating $8,074.20, but the defendant failed to pay the same and the plaintiff's suit is to recover said sum.

The defendant's counterclaim is based upon the contract, and predicates a right to recover $15,088.06, being one-half of the amount expended by the plaintiff in doing work for the protection of the portion of its right of way and track lying between the points B and C. The particulars of the defendant's claim are, that in 1894 the river began to make rapid encroachments on the land lying between the bank of the river

and the defendant's right of way, between points B and C, and for five or six days about fifteen or twenty feet a day of said land was being carried away by the river. The defendant requested the plaintiff to take steps to protect the same from said encroachments. The defendant declined so to do on the ground that under its contract it was not obligated to protect that portion of the defendant's right of way. In the winter of 1895, to prevent a repetition of the experiences of 1894, the defendant constructed four dykes, two of which were projected into the river, between the points B and C, and two others between the point C and the mouth of the Big Blue river, which emptied into the Missouri river between the points C and D. The work done in the summer of 1894 was "emergency work," whereas the dykes were "permanent work." No estimate of costs in advance of the doing of the "permanent work" was made by the engineers of the parties to the contract as provided in section 2 of the contract for "permanent work." The plaintiff refused to do said work to protect the portion lying between the points B and C, and the defendant had the work done, and did not at any time until a short time before the institution of this suit, and after being threatened with suit by the plaintiff, assert any claim against the plaintiff therefor, or render to the plaintiff any account of the expense incurred by it in so doing. The work thus done to protect the portion of the defendant's right of way between points B and C is the sole point involved in this case and is the whole foundation for the defendant's counterclaim.

## I.

The defendant's counterclaim is based entirely upon the contract of 1891. Unless, therefore, the contract authorized the defendant to do the work sought to be recovered for by it in this action, the counterclaim must fail. The defendant having elected to stand on the con-

tract, it is not entitled to recover, even though the work done by it may have been of value to the plaintiff in the protection of the other parts of the plaintiff's right of way, which the plaintiff was under obligation to protect. A party cannot count upon a contract and recover upon a *quantum meruit.* [Cole v. Armour, 154 Mo. l. c. 351, and cas. cit.]

The record does not disclose why the defendant did not contract for the use of or easement over the portion of the plaintiff's right of way which lies between points B and C, as well as over the other portions of the plaintiff's right of way. It is not, therefore, for the court to speculate as to the causes or reasons which actuated the parties in making this difference. Courts can only give effect to contracts, when legal, as the parties themselves have made them. The defendant's right in this case must depend upon the construction of the contract. It is not contended by the defendant that the words or letter of the contract cast any obligation on the plaintiff to protect the right of way between the points B and C from the encroachments of the river, but the defendant contends that the whole spirit of the contract casts such an obligation on the plaintiff. The defendant reasons that it was obligatory upon the plaintiff to protect its own right of way from the encroachments of the river and that the construction of the defendant's road north of the plaintiff's right of way and the agreement of the defendant to pay the plaintiff one-half of the cost of such protection, necessarily casts upon the plaintiff the duty of protecting its whole right of way, and that the plaintiff failed in this duty, and that the defendant was obliged to do the work in order to protect its own right of way between points B and C, and thereby incidentally benefited the plaintiffs right of way between those points, and likewise benefited it at other points where the defendant's road was constructed on the plaintiff's right of way, and which, by the terms of the contract, the plaintiff, con-

cededly, was under obligation to do the work of protecting.

The defendant further claims that the construction put on the contract by the acts of the parties should control the court in its construction of the contract, and under this contention the defendant claims that the plaintiff did work one thousand feet west of the point D where the defendant's road entered upon the plaintiff's right of way, so as, thereby, to protect the portion of the defendant's right of way which lies east of point D, and that the plaintiff rendered bills to the defendant for one-half of the cost thereof and the defendant paid the same. The defendant, however, is clearly in error in this branch of its contention, for there is no evidence whatever to sustain the contention. It is true that the plaintiff did such work at the point one thousand feet east of point D, but the evidence shows that it did so under a contract with the Kansas City & Suburban Belt Railway Company, and not under its contract with the defendant, and that the plaintiff and the Kansas City and Suburban Belt Railway Company paid the cost thereof and the defendant paid no part thereof. This feature of the defendant's contention will therefore receive no further consideration.

Under the issues joined in this case it may be conceded that if the defendant had not done the emergency work between points B and C in the summer of 1894, the result might have been that after washing away the defendant's right of way, the river might have encroached upon the plaintiff's right of way, and that by protecting its own right of way from the inroads of the water, the defendant thereby conferred an incidental benefit upon the plaintiff. But the complete answer to this is, that the defendant had no contract with the plaintiff so to do, the plaintiff refused to have anything to do with the work or to pay any part of the cost thereof and the defendant could not create a contract with the plaintiff therefor without its consent, and in this

action it is only entitled to recover by virtue of contract, for its right is, in this action, predicated upon the contract. The defendant has no more claim against the plaintiff for such work because of the incidental benefit that accrued to the plaintiff from the doing thereof, than it has against the Chicago & Alton Railroad, whose tracks lie south of the plaintiff's right of way, and which might have also been washed away if the defendant had not done such work. The same is true as to the owners of all other property lying eastwardly of the points C and B, who were incidentally benefited by the emergency and permanent work done by defendant.

The contract casts a specific obligation upon the plaintiff to protect specified portions of its right of way from the inroads of the river, and there is no pretense that the plaintiff failed in its duty as to such portions. Neither the letter, the context nor the spirit and meaning of the contract casts any obligation on the plaintiff to protect the defendant's right of way between the points B and C. This being true, the trial court properly overruled the defendant's demurrer to the evidence, and likewise properly instructed the jury to find against the defendant on its counterclaim, and in favor of the plaintiff for $8,074.22, with six per cent interest thereon from the 15th of July, 1897, the date when the same became due, was demanded and was not paid.

## II.

The defendant next contends that the verdict is excessive. The gravamen of this contention is, that $8,074.22, with six per cent interest thereon from July 15, 1897, to October 31, 1900, does not aggregate $9,-722.70, the amount of the verdict. The plaintiff admits that the verdict is $53.85 in excess of the proper amount due the plaintiff, under the instruction of the court. The plaintiff, however, contends that whilst it should

be required to, and is willing to, remit the $53.85, it should not be charged with the costs of this appeal, because this specific objection was not made in the trial court and the plaintiff was not given an opportunity there to remit the excess of damages; and the plaintiff contends that whilst the defendant, in its motion for new trial, claimed that the damages assessed by the jury were excessive, such general allegation was not sufficient to put plaintiff, and the trial court, upon notice of the particulars wherein the defendant claimed the damages were excessive.

What the plaintiff urges may be true, yet as the motion for new trial assigned as a ground therefor that the damages were excessive, and as the instruction of the court was to find a specified sum with specified interest from specified dates, it was a mere matter of mathematical calculation as to whether or not the verdict exceeded the amount the jury were instructed to return a verdict for. The plaintiff could have made that calculation at that time as well as now and its contention must therefore be resolved against it.

Upon the plaintiff remitting the sum of $53.85, within thirty days, the judgment of the circuit court will be affirmed, otherwise it must be reversed and the cause remanded for a new trial.

All concur.